**2007 BNH 031**          Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                    Bk. No. 04-14151-JMD and
                                                          Bk. No. 04-14152-JMD

Robotic Vision Systems, Inc., and                         Jointly Administered
Auto Image ID, Inc.,                                      Chapter 7
                    Debtors

Steven M. Notinger,
Chapter 7 Trustee,
                    Plaintiff

v.                                                        Adv. No. 06-1423-JMD

Pasquale Costa, Frank DiPietro,
Jay M. Haft, Jonathan Howe,
Mark J. Lerner, Howard Stern, and
Robert H. Walker,
                    Defendants

*James W. Donchess, Esq.*          *Thomas M. Greene, Esq.*
*Deborah A. Notinger, Esq.*        *Michael Tabb, Esq.*
*Donchess & Notinger, P.C.*        *Greene & Hoffman, P.C.*
*Nashua, New Hampshire*            *Boston, Massachusetts*
*Attorneys for Plaintiff*          *Attorneys for Plaintiff*

*Thomas J. Pappas, Esq.*           *Charles A. Dale III, Esq.*
*Wiggin & Nourie, P.A.*            *Daniel J. Kelly, Esq.*
*Manchester, New Hampshire*        *David Himelfarb, Esq.*
*Attorney for Pasquale Costa,*     *McCarter & English, LLP*
*Frank DiPietro, Howard Stern, and Robert H.*   *Boston, Massachusetts*
*Walker*                           *Attorneys for Pasquale Costa,*
                                   *Frank DiPietro, Howard Stern, and Robert H.*
                                   *Walker*

*Michael J. Connolly, Esq.*        *Lawrence S. Hirsh, Esq.*
*Daniel M. Deschenes, Esq.*        *William C. Baton, Esq.*
*Hinckley Allen Snyder, LLP*       *LeBoeuf, Lamb, Greene & MacRae LLP*
*Concord, New Hampshire*           *New York, New York*
*Attorneys for Jay M. Haft*        *Attorneys for Jay M. Haft*

*John M. Sullivan, Esq.*                    *Edward J. Fuhr, Esq.*
*Joshua E. Menard, Esq.*                    *Terence J. Rasmussen, Esq.*
*Preti Flaherty Beliveau & Pachios LLP*     *Hunton & Williams LLP*
*Concord, New Hampshire*                    *Richmond, Virginia*
*Attorneys for Jonathan Howe*               *Attorneys for Jonathan Howe*

## MEMORANDUM OPINION

### I.      INTRODUCTION

Steven M. Notinger, as chapter 7 trustee (the "Trustee") of Robotic Vision Systems, Inc. (the "Debtor" or "RVSI"), filed a twenty-three count complaint against seven former directors of the Debtor seeking, among other relief, to recover for breach of fiduciary duty to RVSI and its creditors and objecting to the directors' proofs of claims.  The defendants, with the exception of Mark Lerner ("Lerner"), have filed motions seeking to dismiss various counts of the complaint. Specifically, Pasquale Costa ("Costa") seeks to dismiss Counts I through IV and portions of Count IX; Frank DiPietro ("DiPietro"), Howard Stern ("Stern"), Robert H. Walker ("Walker"), and Jay M. Haft ("Haft") seek to dismiss Count V; and Jonathan Howe ("Howe") seeks to dismiss Counts V and XIX.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### II.     MOTION TO DISMISS STANDARD

In order to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure

7012(b),[1] the Court must accept the allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, the Court must deny the motion to dismiss.  Warth v. Seldin, 422 U.S. 490, 501 (1975) (cited in Boles v. Filipowski (In re Enivid, Inc.), 345 B.R. 426, 441-42 (Bankr. D. Mass. 2006)); Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Blackstone Realty LLC v. Fed. Deposit Ins. Corp., 244 F.3d 193, 197 (1st Cir. 2001); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994); Bezanson v. Gaudette (In re R & R Assocs. of Hampton), 248 B.R. 1, 4 (Bankr. D.N.H. 2000).  In its recent decision in Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), the United States Supreme Court explained that a complaint will survive a motion to dismiss under FRCP 12(b)(6) only if the allegations in the complaint cross the line between "possibility" and "plausibility" of entitlement to relief.  Bell Atl., 127 S. Ct. at 1966 (citing DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999)).  A plaintiff need not plead sufficient facts to establish a prima facie case.  Swierkiewicz v. Sorema N.A. 534 U.S. 506, 515 (2002) (cited with approval in Bell Atl., 127 S. Ct. at 1969).  Rather, the complaint must only provide the defendants with fair notice of the plaintiff's claims and sufficient facts to provide notice of the grounds upon which such claims rest.  Bell Atl., 127 S. Ct. at 1959; Adelphia Communications Corp. v. Bank of Am., N.A. (In re Adelphia Communications Corp.), 365 B.R. 24, 33 (Bankr. S.D.N.Y. 2007).

As explained in this Court's recent decision in Official Committee of Unsecured Creditors v. Foss (In re Felt Mfg. Co., Inc.), 2007 BNH 027, 6-7, the dismissal standard

---

[1]  In general the Federal Rules of Civil Procedure are made applicable to this adversary proceeding, with some exceptions and additional provisions, by the Federal Rules of Bankruptcy Procedure.  The Federal Rules of Civil Procedure shall be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure shall be referred to as "Rule" in this opinion.

articulated by the Supreme Court in Bell Atlantic is in line with previous decisions of the First Circuit Court of Appeals. Post-Bell Atlantic, the First Circuit has stated that a complaint must allege "a plausible entitlement to relief," Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl., 127 S. Ct. at 1967), and further has indicated that a plaintiff must plead facts sufficient to allow the necessary inferences to be drawn that the plaintiff may be entitled to relief. Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007).

The Court of Chancery of Delaware has stated that in Bell Atlantic "our nation's high court has now embraced the pleading principle that Delaware courts have long applied, which is that a complaint must plead enough facts to plausibly suggest that the plaintiff will ultimately be entitled to the relief [the plaintiff] seeks." Desimone v. Barrows, 924 A.2d 908, 929 (Del. Ch. 2007). This Court does not agree that the federal pleading standard articulated in Bell Atlantic is the same as the Delaware pleading standard. In Delaware, when considering a motion to dismiss for failure to state a claim, "the Court must assume the truthfulness of all well-pleaded facts contained in the complaint, view those facts and all reasonable inferences drawn therefrom in the light most favorable to the plaintiff, and determine with 'reasonable certainty' whether the plaintiff would be entitled to relief under any set of facts that could be proven." Orman v. Cullman, 794 A.2d 5, 15 (Del. Ch. 2002) (emphasis added); see also Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 781 (Del. Ch. 2004) (stating a motion to dismiss for failure to state a claim must be granted when it appears with "reasonable certainty" that the plaintiff would not be entitled to the relief sought under any set of facts which could be proven to support the action). Well-pleaded allegations include "specific allegations of fact and conclusions supported by specific allegations of fact." Orman, 794 A.2d at 15 n.5 (quoting Malpiede v. Townson, 780 A.2d 1075, 1083 n.16 (Del. 2001)). Delaware courts require "reasonable certainty" regarding a

plaintiff's entitlement to relief while federal courts require "plausibility," which appears to be a

less stringent standard.

> Therefore, [in this Court] in order satisfy the requirements of FRCP 8(a) and to
> survive a motion to dismiss under FRCP 12(b)(6), the allegations in a complaint
> must put defendants on fair notice of the plaintiff's claim and allege sufficient
> facts to establish a plausible entitlement to relief.  Bell Atl., 127 S. Ct. at 1967.
> The allegations in the complaint must cross the line between the mere possibility
> of relief to the plausibility of relief.  Id. at 1966.  However, requiring "plausible
> grounds [for relief] . . . does not impose a probability requirement at the pleading
> stage; it simply calls for enough fact to raise a reasonable expectation that
> discovery will reveal evidence [to support relief]."  Id. at 1965.  Even if the Court
> believes that the proof of the facts alleged is "very remote and unlikely," a well
> pleaded complaint may proceed.  Id.

Felt Mfg. Co., 2007 BNH 027, 7.

"While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state

an actionable claim, such a motion may sometimes be premised on the inevitable success of an

affirmative defense. . . .  Dismissing a case under Rule 12(b)(6) on the basis of an affirmative

defense requires that (i) the facts establishing the defense are definitively ascertainable from the

complaint and the other allowable sources of information, and (ii) those facts suffice to establish

the affirmative defense with certitude."  Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)

(citations and quotations omitted), cert. denied, 127 S. Ct. 2131 (2007).


## III.     DISCUSSION

### A.     Counts I to V - Breach of Fiduciary Duty by Costa, DiPietro, Stern, Walker, Howe, and Haft

In determining whether the Trustee has stated valid causes of action against the

defendants for breach of fiduciary duty, the Court must look to Delaware law as RVSI is a

Delaware corporation (Complaint at ¶ 9)[2] and the law of the state of incorporation governs a corporation's affairs.  See CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 90 (1987); CBBN.com, Inc. v. Thomas Fin., Inc., 270 F. Supp. 2d 146, 151 n.2 (D. Mass. 2003); Micro Networks Corp. v. HIG Hightec, Inc., 195 F. Supp. 2d 255, 265 n.1 (D. Mass. 2001); Harrison v. NetCentric Corp., 744 N.E.2d 622, 628 (Mass. 2001).

### 1.      Business Judgment Rule

"The directors of Delaware corporations have a triad of primary fiduciary duties:  due care, loyalty, and good faith. . . .  The shareholders of a Delaware corporation are entitled to rely upon their board of directors to discharge each of their three primary fiduciary duties at all times."[3] Emerald Partners, 787 A.2d 85, 90 (Del. 2001).  Officers of a Delaware corporation owe the same fiduciary duties as its directors:  due care, loyalty, and good fath.  Miller v. U.S. Foodservice, Inc., 361 F. Supp. 2d 470, 477 (D. Md. 2005).

> [Delaware law] presumes that "in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company."  Those presumptions can be rebutted if the plaintiff shows that the directors breached their fiduciary duty of care or loyalty or acted in bad faith.  If that is shown, the burden then shifts to the director defendants to demonstrate the challenged act or transaction was entirely fair to the corporation and its shareholders.

Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.), 906 A.2d 27, 52 (Del. 2006) (quoting Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) and citing Emerald Partners, 787 A.2d at 91; Brehm v. Eisner, 746 A.2d 244, 264 n.66 (Del. 2000)).  "The business judgment rule operates as

---

[2]  Hereinafter in this opinion, numbers following the "¶" symbol refer to the corresponding paragraph in the complaint.

[3]  "Several Delaware cases have examined whether good faith is an independent fiduciary duty or a component of the traditional fiduciary duties of care and loyalty under Delaware law."  Boles v. Filipowski (In re Enivid, Inc.), 345 B.R. 426, 452 (Bankr. D. Mass. 2006).  For the reasons set forth in Enivid, the Court will consider these duties as separate and not redundant or synonymous.  Id. at 452-53.

a procedural guide for litigants and as a substantive rule of law." Emerald Partners, 787 A.2d at 90. "[D]irectors' decisions will be respected by courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available." Brehm, 746 A.2d at 264 n.66; see also Aronson, 473 A.2d at 812.

The duty of care relates to the process by which fiduciaries make decisions; courts "do not measure, weigh or quantify directors' judgments." Brehm, 746 A.2d at 264. Rather, as long as a director's decision is "the product of a process that was either deliberately considered in good faith or was otherwise rational," grounds do not exist to impose liability on a director for breach of the duty of care. In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 967 (Del. Ch. 1996); see Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 242 (3d Cir. 2005) (suggesting a breach of the duty of care occurs when directors engage in an irrational decision-making process). "[I]n making business decisions, directors must consider all material information reasonably available, and . . . the directors' process is actionable only if grossly negligent." Brehm, 746 A.2d at 259. Decisions that are "substantively wrong" or "stupid" or "egregious" or even "irrational" form no basis for director liability absent allegations that a director acted without due care, i.e., the director employed a decision making process that lacked good faith or rationality. Caremark Int'l, 698 A.2d at 967.

The duty of loyalty has two elements:  independence and disinterestedness. Orman v. Cullman, 794 A.2d 5, 23 (Del. Ch. 2002). "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences. . . . [E]ach director [must have] brought his or her own informed

7

business judgment to bear with specificity upon the corporate merits of the issues without regard

for or succumbing to influences which convert an otherwise valid business decision into a

faithless act."  Aronson, 473 A.2d at 816.

> [Independence] involves an inquiry into whether the director's decision resulted
> from that director being underlined controlled by another.  A director can be controlled by
> another if in fact he is dominated by that other party, whether through close
> personal or familial relationship or through force of will.  A director can also be
> controlled by another if the challenged director is beholden to the allegedly
> controlling entity.  A director may be considered beholden to (and thus controlled
> by) another when the allegedly controlling entity has the unilateral power
> (whether direct or indirect through control over the other decision makers), to
> decide whether the challenged director continues to receive a benefit, financial or
> otherwise, upon which the challenged director is so dependent or is of such
> subject material importance to him that the threatened loss of that benefit might
> create a reason to question whether the controlled director is able to consider the
> corporate merits of the challenged transaction objectively.

Orman, 794 A.2d at 25 n.50 (emphasis in original); see also Benihana of Tokyo, Inc. v.

Benihana, Inc., 891 A.2d 150, 177 (Del. Ch. 2005) ("This Court will not find a director beholden

unless the purported controlling person has 'unilateral' power to substantially affect the

director.")

A director is considered "interested," and thus disloyal, when "(1) the director personally

receives a benefit (or suffers a detriment), (2) as a result of, or from, the challenged transaction,

(3) which is not generally shared with (or suffered by) the other shareholders of his corporation,

and (4) that benefit (or detriment) is of such subjective material significance to that particular

director that it is reasonable to question whether that director objectively considered the

advisability of the challenged transaction to the corporation and its shareholders."  Orman, 794

A.2d at 25 n.50.  Actions taken by fiduciaries to maintain their employment, stock options and

benefits of their position constitute "entrenchment" and improper self-interest.  See, e.g., Enivid,

345 B.R. at 445; Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 363 (Del. 1993).

Breach of the duty of good faith involves "intentional dereliction of duty" or "a conscious disregard for one's responsibilities." Walt Disney Co., 906 A.2d at 65-66. In general, bad faith involves "the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P., 624 A.2d 1199, 1208 n.16 (Del. 1993).

## 2.  Exculpatory Charter Provision

In addition to being protected by the business judgment rule, directors may be protected by an exculpatory provision in a company's certificate of incorporation. Section 102(b)(7) of Delaware's general corporation law[4] permits shareholders, who are entitled to rely upon directors to discharge their fiduciary duties at all times, to adopt a provision in the certificate of incorporation to exculpate directors[5] from any personal liability for the payment of monetary damages for breaches of their duty of care but not for duty of loyalty violations, good faith violations, and certain other conduct. Emerald Partners, 787 A.2d at 90. In accordance with section 102(b)(7), RVSI's charter[6] states:

---

[4] The statute states in relevant part that "the certificate of incorporation may also contain . . . [a] provision eliminating or limiting the personal liability of a director to the corporation . . . for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit." Del. Code Ann. tit. 8, § 102(b)(7).

[5] An exculpatory provision in a company's certificate of incorporation does not protect officers from liability. See Lincoln v. DePetrillo (In re Century Elecs. Mfg. Inc.), 345 B.R. 33, 36 (Bankr. D. Mass. 2006). Accordingly, RVSI's exculpatory charter provision cannot protect Costa from liability for breaches of his fiduciary duty as an officer of RVSI, which claims the Trustee asserts in Counts I and II of the complaint.

[6] The Court may take judicial notice of RVSI's exculpatory charter provision without turning the defendants' motions to dismiss into motions for summary judgment. See, e.g., Enivid, 345 B.R. at 444 n.12 (taking judicial notice of an exculpatory charter provision on a motion to dismiss under FRCP

> No director of the corporation shall be liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability: (i) for any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under Section 174 of the Delaware General Corporation Law; or (iv) for any transaction from which the director derived an improper personal benefit.

RVSI Restated Certificate of Incorporation ¶ 9 (Nov. 1, 1995).

In actions against the directors of a Delaware corporation with a section 102(b)(7) charter provision, a complaint must allege well-pleaded facts that, if true, implicate breaches of loyalty or good faith. Emerald Partners, 787 A.2d at 91; see Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 795 (Del. Ch. 2004) (stating "to the extent the directors have engaged in conscious wrongdoing or in unfair self-dealing, the exculpatory charter provision does not insulate them from fiduciary duty claims"); Malpiede v. Townson, 780 A.2d 1075, 1094 (Del. 2001) ("Had plaintiff alleged such well-pleaded facts supporting a breach of loyalty or bad faith claim, the Section 102(b)(7) charter provision would have been unavailing as to such claims, and this case would have gone forward."). The section 102(b)(7) exculpatory charter provision shields directors from liability resulting from claims of negligence, including gross negligence. Malpiede, 780 A.2d at 1094-95. Thus, if a complaint unambiguously asserts only a duty of care claim, the complaint is dismissible once the corporations's section 102(b)(7) provision is properly invoked, e.g., in a motion to dismiss. Emerald Partners, 787 A.2d at 91 (citing Malpiede, 780 A.2d at 1093). The exculpation afforded by section 102(b)(7) must be affirmatively raised by director defendants. Emerald Partners, 787 A.2d at 91. "[T]he exculpatory effect of a Section 102(b)(7) provision only becomes a proper focus of judicial

---

12(b)(6)); McMillan v. Intercargo Corp., 768 A.2d 492, 501 n.40 (Del. Ch. 2000) ("The court may take judicial notice of an exculpatory charter provision in resolving a motion addressed to the pleadings.").

scrutiny after the directors' potential personal liability for the payment of monetary damages has been established."  Id. at 93.

Thus, together the business judgment rule and the exculpatory charter provision provide directors with powerful protections and place a large burden on plaintiffs seeking damages from directors and officers of a Delaware corporation for breach of their fiduciary duties of due care, loyalty, and good faith.

### 3.       Counts I to IV - Breach of Fiduciary Duty by Costa

Costa seeks to dismiss Counts I to IV, which allege breaches of fiduciary duty by Costa in his capacity as an officer and as a director, both prepetition and postpetition.  Costa asserts the following reasons for dismissal:  (1) the business judgment rule shields Costa from any liability in Counts I to IV for breach of his fiduciary duty as an officer and a director; (2) RVSI's exculpatory charter provision shields Costa from any liability in Counts III and IV for breach of his fiduciary duty as a director; and (3) Costa cannot be held liable in Counts I and II for breach of his fiduciary duty as an officer when the challenged transactions involve his conduct as a director.  The Trustee argues in response:  (1) the Court should not consider Costa's affirmative defenses based upon the business judgment rule or RVSI's exculpatory charter provision; (2) the business judgment rule and RVSI's exculpatory charter provision do not shield Costa from any liability for breach of his fiduciary duty as officer or as a director because the complaint states a claim against Costa for breach of his duties of loyalty and good faith; and (3) the complaint states a claim for breach of Costa's duties as an officer.

### a.       Business Judgment Rule

The Court disagrees that the Trustee is not required to address the potential affirmative defenses of Costa and the other director defendants.  In asserting breach of fiduciary duty claims,

it should have been obvious to the Trustee that the business judgment rule would be implicated. For that reason, the Trustee was required to plead that he can overcome the presumption created by the business judgment rule in order to survive a motion to dismiss under FRCP 12(b)(6). CTC Litig. Trust v. Fabbricatore (In re CTC Communications Group, Inc.), Bk. No. 02-12873 (PJW), Adv. No. 05-01441-RS, 2007 WL 760389, at *3 (Bankr. D. Mass. Mar. 13, 2007) (quoting Tower Air, 416 F.3d at 238); Panos v. Sullivan (In re Sabine, Inc.), Bk. No. 03-10668-JNF, Adv. No. 05-1019-JNF, 2006 WL 1045712, at *7 (Bankr. D. Mass. Feb. 27, 2006).  The Trustee has made such contentions by alleging that Costa breached his duties of loyalty and good faith.

The Trustee contends that Costa breached his duties of loyalty and/or good faith by (1) interfering with RVSI's attempts to sell SEG in 2002 and 2003, (2) fabricating allegations against Intel to divert attention from his poor performance, (3) his self-dealing in connection with his acquisition of a security interest in RVSI's assets, (4) forfeiting the GSI license, (5) purchasing Lerner's silence with corporation funds, (6) grossly mismanaging the Debtor in the weeks prior to RVSI's bankruptcy filing, (7) refusing to respond to the Silver Point debtor-in-possession financing proposal, (8) failing to abide by the vote of the majority of disinterested directors who voted to remove Costa on January 17, 2005, and (9) filing vexatious litigation after the Court appointed a controlling person to run the company.

Costa argues that the Trustee has not sufficiently alleged a claim for breach of Costa's duty of loyalty and good faith because he has not alleged that Costa intentionally failed to act in the face of a known duty to act or demonstrated a conscious disregard for his duties.  Costa argues, moreover, that many of the claims the Trustee seeks to litigate are simply inactionable because (1) the decisions were part of a legitimate corporate strategy (e.g., not selling SEG

unless sufficient proceeds were received to fund ACIM), (2) the Debtor suffered no damages or any claim of damages would be overly speculative (e.g., Costa's loan to the Debtor which the Debtor never intended to pay back or Costa's refusal to vote to recuse himself one day, even though he agreed to step down a few days later), or (3) Costa was no longer an officer or director when he undertook the challenged conduct (i.e., all his conduct after the controlling person was appointed is not actionable).

To find a breach of a director's duty of loyalty, the Court must find a director lacks independence or is not disinterested.  Orman, 794 A.2d at 23.  "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences."  Aronson, 473 A.2d at 816.  A director is considered "interested," and thus disloyal, when the director personally receives a benefit as a result of the challenged transaction, which is not generally shared with the other shareholders of his corporation, and that benefit is of such subjective material significance to that particular director that it is reasonable to question whether that director objectively considered the advisability of the challenged transaction to the corporation and its shareholders.  Orman, 794 A.2d at 25 n.50. Actions taken by fiduciaries to maintain their employment and the benefits of their position constitute "entrenchment" and improper self-interest.  See, e.g., Enivid, 345 B.R. at 445; Cede & Co., 634 A.2d at 363.  To find a breach of a director's duty of good faith, the Court must find the director was intentionally derelict in performing his duties or consciously disregarded his responsibilities.  Walt Disney Co., 906 A.2d at 65-66.

In the FRCP 12(b)(6) context of this case, the Court must examine the complaint and determine whether the Trustee has sufficiently alleged that Costa (1) undertook action based on extraneous considerations and influences, and not on the corporate merits of the subject before

the board, (2) personally benefitted from various decisions, or (3) intentionally disregarded his responsibilities or was derelict in performing his duties.  In ¶ 1 of the complaint, the Trustee sets forth his overarching theme:  Costa "deliberately and repeatedly sacrificed the interests of shareholders and creditors in order to preserve his dictatorial control over RVSI, blocking and subverting every proposal or offer to restructure RVSI, even though a failure to achieve such a restructure would certainly destroy the interests of the shareholders and creditors to whom he owed fiduciary duties."  The remainder of the complaint is replete with allegations that put Costa on fair notice of the Trustee's claims and state a plausible claim that Costa breached his duties of loyalty and good faith.

Upon review, the Court finds the complaint includes three different types of allegations (1) those that tend to show that Costa acted in self-interest to ensure his continued control of RVSI, (2) those that suggest Costa personally benefitted from the corporate decision regarding Costa's loan to the company, and (3) those that show that Costa intentionally disregarded his responsibilities and was derelict in his duties.

### i.    Self-interest

The Trustee states in ¶ 30 that "Costa took action against the best interests of RVSI's shareholders and creditors to entrench his positions at RVSI and ensure that he would be able to control the company, despite the fact that viewed from any objective metric for evaluating corporate performance--earnings, stock price, market share--his abysmal leadership was destroying the company.  Indeed as corporation performance deteriorated, actions taken by Costa to entrench himself (and actions taken or tolerated by the Board to further and facilitate Costa's entrenchment) accelerated."  In ¶ 29 the complaint states "Costa opposed any 'concentration of ownership' of the new shares" being offered to raise new capital in 2002, a position he shared

with only three of the five members of the board.  In ¶¶ 31-34, the Trustee sets forth allegations regarding a management buyout of RVSI which, if true, demonstrate that Costa seemed to be undertaking actions, not based upon benefits to the corporation, but rather based upon extraneous considerations and influences, namely, for the "conscious purpose of insuring that no person or group of persons could disturb or challenge his control of RVSI."

"Costa used his power within RVSI to try to avoid RVSI's management being made history, even at the expense of the corporation."  ¶ 38.  According to the Trustee, "[w]hile such transactions would pay off all creditors and create value for the shareholders (whose stock was worth next to nothing), Costa would lose the fiefdom he had created over eighteen years, and be forced out.  Costa did not consummate the transaction or tell the Board the truth about Needham's recommendations so that he would remain in control of RVSI's technology, not because he had objective evidence that the ESI bid was unreasonable."  ¶ 44.  "Costa had no concern about selling assets at reasonable prices, if the money would be paid to creditors and he could not use it to keep control."  ¶ 81.

"To preserve his reputation and to prevent other dissidents within RVSI's corporate constituency from having a power basis to attack him [i.e., through the resignation letter of Lerner and Tomas Kohn which laid out numerous claims of mismanagement by Costa], Costa directed [RVSI's counsel] to negotiate a consulting agreement between RVSI and Lerner" which would purchase Lerner's silence.  ¶¶ 100-02.  "Costa was as much a beneficiary of the transaction as Lerner, and did it to preserve his reputation and his control over the company."  ¶ 105.

"Costa and the Defendant Directors determined that preserving Costa's position was more important than preserving the company.  They rejected EGII's offer [to fund RVSI and

even increase its credit line but only if Costa surrendered control] and filed for bankruptcy the next day, despite the lack of any plan to finance the company while it was in Chapter 11." ¶ 120.

"Costa's claim that Silver Point was somehow connected to Zell was a pretext to avoid entering into an agreement which would require him to surrender his control over the Board of Directors and the shareholders." ¶ 126. "The only reason Costa and the other Defendants refused to authorize negotiations was to preserve Costa's control and power over RVSI. Acceptance of the offer would have given Silver Point control of the Board of Directors and the ability to become RVSI's majority shareholder. Costa's ability to manage the company would have been challenged and they could have removed him at any time." ¶ 129.

"Costa's litigation [seeking the appointment of a trustee in bankruptcy] was brought for one reason only: to try to recover his control and to punish those who took it away from him." ¶ 136.

These allegations, if true, tend to establish that Costa was motivated by self-interest and extraneous considerations and influences and not based on the corporate merits of any decision. The Trustee has set forth a plausible claim for breach of Costa's duty of loyalty.

### ii.    Personal Benefit

The Trustee alleges in the complaint that Costa acquired a security interest in the company's assets which was adverse to the interests of RVSI's shareholders and creditors and which provided Costa with a personal benefit. ¶¶ 66-77. "The note which RVSI issued Costa was a convertible note allowing Costa to convert the debt to equity . . . if RVSI did well, but to have a secured loan if RVSI was not successful." ¶ 71. The Trustee further alleges that Costa was also motivated by an intent to retain his position which could only occur if the company's

operations continued.  ¶ 72.  Such allegations, if true, support a plausible claim that Costa was not disinterested and thus disloyal with respect to this transaction.

### iii.    Dereliction of Duty

The complaint alleges in ¶ 23 that "Costa prohibited the Board from engaging in any long term or strategic planning.  He admitted in e-mails that he deliberately limited the information available to the Board and only provided them with information he believed was necessary."  In ¶ 27, the complaint states that "[w]hen the Board did instruct Costa to exit a particular business–such as when the Board instructed management to sell SEG–Costa ignored the directive, undermined the decision and ultimately did as he chose."  The complaint in ¶ 35 alleges that "[o]ver a period of years, as hereinafter detailed, Costa engaged in a pattern of reporting false, incomplete, and misleading information to the Board of Directors concerning important affairs of RVSI."

With respect to sales of SEG, the Trustee alleges that "Costa brought the ESI offer letter to the RVSI Board of Directors and informed them, falsely, that Needham believed the bid was not serious.  He did not inform the Board that Needham recommended further negotiations to increase the price.  Instead Costa informed the Board that he intended to inform ESI that RVSI would not consider the offer and that further discussions would serve no purpose."  ¶ 43.

The Trustee alleges that Costa's actions with regard to Intel, the Debtor's most important customer, were plainly delusional and involved a lack of good faith.  The Trustee makes numerous allegations, like this one, that Costa "became convinced that Intel had decided to destroy RVSI, and was conspiring with its competitors to cripple the company financially so that RVSI's technology would be sold to an entity friendly to Intel at a bargain price."  ¶ 55.  "Costa devoted much of his time, and that of his subordinates to writing long detailed histories of the

Intel conflict." ¶ 57.  "Costa's obsession with Intel's alleged wrongdoing came to dominate almost all senior corporate decision making." ¶ 58.  The Trustee alleges that "Costa's obsession with Intel's alleged wrongdoing had completely overcome his judgment." ¶ 60.  The Trustee alleges that by destroying RVSI's critical relationship with Intel, RVSI lost Intel's business and the SEG division was never able to regain its market shares or revenues. ¶ 64.

Other instances of intentional dereliction of duty are contained in the following allegations.  "Costa did not forward the U-Group valuation to the other members of the Board.  In fact, he never sent the Board members any valuations of SEG or ACIM, despite numerous requests in the minutes of the Board of Directors." ¶ 82.  "Costa never informed the RVSI Board about the KLA-Tencor bid." ¶ 83.  "Costa did not disclose the [FEI] offer to the Board at the August 14, 2003 Board meeting, but dismissed it as too low.  At the same time, he lied to the Board of Directors claiming that he was still waiting for an offer from KLA-Tencor." ¶ 84.  "Costa . . . decided that he would not make any further payments [on the GSI license] due to his personal animosity towards GSI and it[s] CEO. . . . Costa did not consult with the Board or counsel before choosing not to pay the final installments fo the Note." ¶¶ 90-91.

Thus, taken together, the complaint alleges facts necessary to overcome the presumption created by the business judgment rule.  The facts in the complaint, if true, set forth a plausible claim for relief and "raise a reasonable expectation that discovery will reveal evidence" that indicates Costa breached his duties of loyalty and good faith.  See Morris v. Zelch (In re Reg'l Diagnostics, LLC), Bk. No. 05-15262, Adv. No. 06-1957, 2007 WL 1587256, at *22 (Bankr. N.D. Ohio June 1, 2007) (quoting Bell Atl. Corp., 127 S. Ct. at 1965)).  For that reason, Costa's motion to dismiss Counts I to IV, which seek recovery for both prepetition and postpetition breaches of Costa's fiduciary duty as both an officer and as a director, shall be denied to the

extent based upon the business judgment rule.  However, to the extent the Trustee seeks to recover for actions taken by Costa after February 2005, such recovery based on breaches of fiduciary duty are barred as the complaint alleges in ¶ 10 that Costa served as an officer and a director only until February 2005.

### b.      RVSI's Exculpatory Charter Provision

Where a complaint alleges well-pleaded facts that implicate the duty of loyalty and good faith, indemnification provisions in a corporation's charter will not subject the complaint to dismissal.  Miller, 361 F. Supp. 2d at 475-76.  As noted previously, such a provision offers protection for directors but not for officers.  Century Elecs. Mfg., 345 B.R. at 36 ("[T]his Court agrees with the majority interpretation of Section 102(b)(7) and holds that the exculpatory clause does not shield officers who are also directors from breach of fiduciary duty claims arising from their acts taken as officers.").  Costa apparently agrees with this assessment as he seeks dismissal only of Counts III and IV based on RVSI's exculpatory charter provision.

For the reasons set forth above, the Court finds that the Trustee has set forth plausible claims for breach of Costa's duties of loyalty and good faith.  Accordingly, RVSI's exculpatory charter provision cannot serve as a defense to the Trustee's claims that Costa breached his fiduciary duty as a director, both prepetition and postpetition, and therefore it cannot serve as the basis for the dismissal of Counts III and IV.

### c.      Costa's Duties as Officer vs. Director

Costa contends that the complaint fails to make a distinction between the capacity in which he took various actions, i.e., whether as an officer or as a director of RVSI.  Costa seeks dismissal of Counts I and II, which seek to impose liability for alleged breaches of Costa's fiduciary duty as an officer, on the grounds that Costa cannot be held accountable as an officer

for decisions he made as a director.  According to Costa, under Delaware law no fiduciary duty regarding the management of a corporation's affairs can be imposed on persons who have no authority to manage those affairs.  See Steinberg v. Kendig (In re Ben Franklin Retail Stores, Inc.), Nos. 97C7934, 97C6043, 2000 WL 28266, at *6 (N.D. Ill. Jan. 12, 2000) (citing Del. Code Ann. tit. 8, § 141(a)).   Costa argues the complaint clearly alleges that the decisions the Trustee challenges are decisions made by the board of directors and not by Costa as an officer of RVSI.

The Trustee argues the complaint alleges that the board delegated all responsibility for operating the business to Costa.  According to the Trustee, in situations such as here, where a defendant has simultaneously held positions as an officer and as a director, the Court should not dismiss claims against such a defendant if it is uncertain when the defendant acted as an officer or as a director.  Rather, the Trustee contends that this is a factual issue to be resolved at trial. See Century Elecs. Mfg., 345 B.R. at 36 (stating, while ruling on a motion in limine, that it is not feasible at this stage of the case to try to parcel out which actions were taken by the defendants in their capacity as directors and which were taken in their capacity as officers but rather permitting the plaintiffs to identify them during trial).

Upon review of the complaint, the Court finds that the Trustee has made sufficient allegations, that if true, demonstrate a plausible entitlement for relief for breach of fiduciary duty by Costa acting in his capacity as an officer.  The Trustee has alleged in ¶ 142 that Costa was "entrusted by the Board of Directors to manage the operations of RVSI and to provide the Board of Directors with all material information necessary for them to carry out their duties."  In ¶¶ 143, 147, 150, and 154, the Trustee details various actions taken by Costa in his capacity as president and chief executive officer of RVSI which the Trustee alleges are breaches of Costa's fiduciary duty, e.g., providing false, incomplete, and misleading information to the Board;

20

wasting funds by making unauthorized payments; failing to protect intellectual property rights; entrenching his own position; firing, hiring, harassing, or intimidating RVSI's employees, professionals, and consultants; intentionally disregarding the interests of creditors after RVSI filed bankruptcy; acting to protect his own financial interests; rejecting the Silver Point deal; and intentionally obstructing the reorganization of RVSI.  Thus, contrary to Costa's contentions, a fair reading of the complaint does not require one to conclude that all of the decisions challenged by the Trustee were decisions taken by the board and not by Costa as an officer.  Accordingly, the Court shall not dismiss Counts I and II on that basis.  Rather, the Trustee will be required at trial to demonstrate in which capacity Costa took specific actions and made certain decisions so that the Court can assess Costa's potential liability for such actions and decisions and determine the applicability of any relevant defenses.

### 4. Count V - Breach of Fiduciary Duty by DiPietro, Stern, Walker, Howe, and Haft

#### a. DiPietro, Stern, Walker, Howe, and Haft

DiPietro, Stern, and Walker filed a joint motion seeking to dismiss Count V because:  (1) the business judgment rule shields them from any liability for breach of their fiduciary duty as directors; and (2) RVSI's exculpatory charter provision also shields them from any liability for breach of their fiduciary duty as directors.  Howe and Haft filed separate motions but made the same arguments as DiPietro, Stern, and Walker as well as an additional argument discussed below.

##### i. Business Judgment Rule

DiPietro, Stern, Walker, Howe, and Haft argue that the Trustee's complaint does nothing more than challenge conduct that can be attributed to a rational business purpose and thus is protected by the business judgment rule.  As explained above, Delaware law presumes that

directors make their decisions "on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." Brehm, 906 A.2d at 52 (quoting Aronson, 473 A.2d at 812). However, the presumption can be rebutted if a plaintiff shows that the directors breached their fiduciary duty of care or loyalty or acted in bad faith. Brehm, 906 A.2d at 52. Once a plaintiff sets forth a claim alleging breach of fiduciary of duty, the business judgment rule may serve as a defense against such a claim.

In this case, the Trustee argues that the defense or presumption of the business judgment rule has not been established with certitude as is required for dismissal in the First Circuit. Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (citations and quotations omitted), cert. denied, 127 S. Ct. 2131 (2007). In the Trustee's view, facts establishing the applicability of the business judgment rule are not definitively ascertainable from the complaint, i.e., the complaint does not conclusively establish that the directors were fully informed, did not act irrationally or for an improper purpose, were not interested, beholden or controlled, and acted at all times in good faith. Rather, he contends that the complaint sets forth sufficient allegations to establish that the directors breached their duties.

In the Trustee's view, the directors' conduct must be examined as a whole and not as isolated incidents. The Trustee contends that the directors breached their duties of loyalty and/or good faith by (1) permitting transactions that did not forward a legitimate corporate purpose, (2) consciously failing to perform their duties, and (3) consciously ignoring their oversight responsibilities. Specifically, the directors allegedly breached their duties of loyalty and/or good faith because (1) the directors knew that they had insufficient information to evaluate the offers for the sale of SEG but they took no action to correct the situation or to require Costa to provide additional information, (2) they permitted Costa, a CEO with delusional views, to destroy

22

RVSI's relationship with Intel, its largest and most influential customer, (3) the directors either failed to properly consider Costa's grant of a security interest to himself or ratified it for an improper purpose, (4) they failed to monitor Costa adequately prior to RVSI's bankruptcy or to take steps to address Costa's irrational behavior despite numerous red flags, (5) they failed to satisfy their oversight duties with regard to RVSI's inaccurate projections, (6) they deliberately refused to act in the face of a clear duty to act when presented with the Silver Point financing proposal, and (7) they improperly failed to abide by the vote of the majority of the disinterested directors who voted to remove Costa on January 17, 2005.  The directors argue that the decisions in which they were involved[7] were the result of rational business judgment and therefore do not constitute breach of their duty of due care.  They argue further that the Trustee has failed to allege sufficient facts, if true, to support a plausible entitlement to relief for breach of their duty of loyalty and/or good faith.

       To find a breach of a director's duty of loyalty, the Court must find that a director lacks independence or is not disinterested.  The Trustee acknowledges that, with the exception of their refusal to pursue the Silver Point proposal, which had the effect of entrenching current management and the existing board, the directors were disinterested as they did not receive a personal benefit as a result of their decisions.  The Trustee contends that the directors lacked independence in making their decisions and thereby breached their duty of loyalty.  As outlined above,

> [Independence] involves an inquiry into whether the director's decision resulted from that director being <u>controlled</u> by another.  A director can be controlled by another if in fact he is <u>dominated</u> by that other party, whether through close personal or familial relationship or through force of will.  A director can also be controlled by another if the challenged director is <u>beholden</u> to the allegedly

---

[7]  See the discussion <u>infra</u> regarding Howe's and Haft's arguments with respect to the fact that they did not serve as directors during the entire period at issue in the complaint.

> controlling entity.  A director may be considered beholden to (and thus controlled by) another when the allegedly controlling entity has the unilateral power (whether direct or indirect through control over the other decision makers), to decide whether the challenged director continues to receive a benefit, financial or otherwise, upon which the challenged director is so dependent or is of such subject material importance to him that the threatened loss of that benefit might create a reason to question whether the controlled director is able to consider the corporate merits of the challenged transaction objectively.

Orman, 794 A.2d at 25 n.50.  To find a breach of the duty of good faith, the Court must find an "intentional dereliction of duty" or "a conscious disregard for one's responsibilities."  Walt Disney Co., 906 A.2d at 65-66.

Upon review of the complaint the Court finds that the Trustee specifically alleges in ¶ 24 that each of the directors was not independent.  The complaint alleges that DiPietro lacked independence and relied on Costa for deciding how to vote on board issues because DiPietro had been retired and uninvolved in corporate operations for more than a decade and had no expertise in RVSI's current businesses.  The Trustee alleges that Costa used RVSI money to heavily support ventures in which DiPietro was involved and thus assured DiPietro's continued support.  The complaint alleges Stern lacked independence because he was an employee who reported to Costa, and he could not oppose Costa without jeopardizing his livelihood.  The complaint alleges Walker lacked independence because he was a former employee who worked as a consultant to the company earning close to $19,000 for work performed in 2001 to 2004, a material amount as Walker had no steady employment income.  In addition, two of Walker's children were employed by RVSI and could be removed at any time by Costa.  The complaint alleges Haft lacked independence because both he and his son's firm had performed consulting work for RVSI at times during the period between 1999 and 2003, and Haft's opposing Costa's board positions would jeopardize any future opportunities to be employed by RVSI.  The complaint alleges Howe lacked independence because his firm had performed consulting work for RVSI

24

for which it was paid $35,000 during the period March 2002 through May 2004, and the failure to support Costa would jeopardize future retention by RVSI.  The complaint further alleges in ¶ 25 that Costa dominated and controlled the board by his ability to remove directors who opposed his management because, unlike most corporations, RVSI did not maintain a nominating committee, and Costa possessed the sole ability to propose the slate of directors that were listed in the corporation's proxy statement in connection with RVSI's annual meeting.

In addition to alleging the directors lacked independence and thus loyalty to RVSI, the complaint makes numerous allegations that the directors consciously disregarded their responsibilities and therefore beached their duty of good faith.  For example, in ¶ 65 the Trustee alleges that "[a]lthough Costa's claims against Intel were objectively unreasonably and the course of conduct proposed by Costa was suicidal, the Board wholly abdicated its oversight of management.  It did not conduct its own investigation of Costa's claims and did not even obtain a legal opinion that Intel's conduct was actionable. . . . the Board did not even consider whether management might be the reason for the loss of business.  Even when Costa made claims against Intel that the Board knew were false their loyalty to Costa, and their commitment to letting him run the company was greater than their duty to run the company for the benefit of the shareholders."  In ¶ 73, the Trustee alleges "[t]he grant of the security interest [to Costa] was ratified despite the absence of adequate disclosures because Defendants Walker, Stern, DiPietro and Haft were more loyal to Costa than to RVSI's shareholders."  In ¶ 82, the complaint asserts that "[o]nly Lerner and Kohn, however, protested this lack of vital information [regarding the valuation of SEG or ACIM].  The other Board members, however, were content to rely on Costa's valuation, even though it was impossible to objectively analyze any offers without comparable data or valuations."  In ¶ 86, the Trustee describes a further instance of the directors

blindly following Costa's decisions when he fired the U-Group: "None of the Defendant Directors challenged Costa's action or asked Costa to review the 'evidence' Costa possessed regarding his allegations" that U-Group was acting in concert with Intel executives and trying to sell SEG for a low price.  In ¶ 96, the Trustee details another instance of the directors (with the possible exception of Haft) failing to act, which was upon their receipt of Skadden Arps resignation later which accused Costa of carrying out his duties in bad faith.  In ¶ 114, the Trustee alleges that despite RVSI quarter-after-quarter failing to meet its projection, "the directors never challenged the projections and never held Costa or his managers accountable for missing their numbers.  At no time did the Defendant Directors attempt to instill financial discipline or take steps to determine why the corporation could not meet its projections.  They simply abdicated all oversight to Costa."  Further instances of the board abdicating their responsibilities as directors are alleged in ¶¶ 121, 126, 138, and 140 of the complaint.

Contrary to the directors' contention, the complaint does not establish with certitude that DiPietro, Stern, Walker, Howe, and Haft are entitled to the presumption of the business judgment rule.  Rather, the complaint contains sufficient allegations, if true, to support the Trustee's entitlement to relief based on the directors' breaches of their duty of loyalty and good faith.  The allegations are more than conclusory statements and they permit sufficient plausible inferences–that the directors lacked independence in the execution of their duties and consciously disregarded their responsibilities–to withstand dismissal.  The Court finds that Trustee has sufficiently pled around the protections of the business judgment rule and, accordingly, the Court shall deny the directors' motion to dismiss Count V based on that defense.

### ii.      RVSI's Exculpatory Charter Provision

In accordance with Delaware law, RVSI's charter contains a provision that exculpates directors from any personal liability for the payment of monetary damages for breaches of their duty of care but not for duty of loyalty violations, good faith violations, and certain other conduct.  See Emerald Partners, 787 A.2d at 90.  DiPietro, Stern, Walker, Howe, and Haft argue that the Trustee's complaint does nothing more than allege duty of care violations which are not actionable in light of RVSI's exculpatory charter provision.  However, as outlined above, the Court finds that the Trustee has sufficiently alleged that the directors lacked independence and consciously and intentionally disregarded their responsibilities to RVSI's shareholders and creditors.  Because, if as alleged by the Trustee, the directors' conduct was either "disloyal" due to the directors' lack of independence or "not in good faith" as they engaged in "intentional misconduct," the liability waived under RVSI's exculpatory clause cannot serve as a defense to the Trustee's breach of fiduciary claims and therefore it cannot serve as the basis for the dismissal of Count V by these directors.

### b.      Howe

In addition to arguing that the business judgment rule and RVSI's exculpatory charter provision shield him from any liability for breach of fiduciary duty as alleged in Count V, Howe also argues that he cannot be liable for acts and decisions in which, based on the face of the complaint, he did not and could not have participated, i.e., actions and decisions made prior to his joining the board in April 2004 and after his leaving the board on January 18, 2005.  The Trustee does not dispute this contention.  Doc. No. 106-1 at 3 n.3.  Directors cannot be held liable for actions of the board of directors taken before the director assumes his position nor after the director resigns.  See Official Committee of Unsecured Creditors of Integrated Health

Services, Inc. v. Elkins, No. Civ. A. 20229-NC, 2004 WL 1949290, at *8 (Del. Ch. Aug. 24, 2004).  Rather, to establish a breach of fiduciary claim under Delaware law, one must demonstrate the existence of a fiduciary relationship between the parties at the time of the alleged breach.  Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169 (De. Ch. 2002). For that reason, all claims against Howe based on actions and decisions occurring prior to April 2004, and after January 18, 2005, shall be dismissed.

### c.    Haft

In addition to his contention that the Trustee failed to state a claim for breach of fiduciary duty because the business judgment rule and RVSI's exculpatory charter provision shield him from any liability for breach of fiduciary duty as alleged in Count V, Haft, like Howe, argues that he cannot be liable for decisions that were made during the period he was not on the board, i.e., decisions made after he left the board on October 21, 2003.  Again, the Trustee has indicated that he does not seek to hold Haft liable for board actions taken after that date.  Doc. No. 106-1 at 3 n.3.  The Trustee's position is consistent with Delaware law as outlined above.  Accordingly, all claims against Haft based on actions and decisions occurring after October 21, 2003, shall be dismissed.

### B.    Count IX - Corporate Waste/Breach of Fiduciary Duty by Costa

In Count IX at ¶¶ 192-200 of the complaint, the Trustee seeks, among other relief, to hold Costa liable for corporate waste by failing to make certain license payments to GSI on behalf of RVSI.  Costa contends that he did not commit waste by failing to make the payments because RVSI received significant value as a result of that decision.  Costa seeks dismissal of Count IX to the extent the Trustee seeks to hold Costa accountable for failing to make those payments.

Under Delaware law, "[d]irectors are guilty of corporate waste, only when they authorize an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration."  Glazer v. Zapata Corp., 658 A.2d 176, 183 (Del. Ch. 1993); see also Brehm, 746 A.2d at 263 ("[A] waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.") (quoting Lewis v. Vogelstein, 699 A.2d 327, 336 (Del. Ch. 1997)); Zupnick v. Goizueta, 698 A.2d 384, 387 (Del. Ch. 1997).  Courts have stated that if "reasonable, informed minds" might disagree on whether a particular exchange was for adequate consideration, "a reviewing court will not attempt to itself evaluate the wisdom of the bargain or the adequacy of the consideration" because "the wide domain over which knowledgeable business judgment may safely act" should be preserved.  Glazer, 658 A.2d at 183.  Rather, in those situations where any reasonable person might conclude that the deal at issue made sense, courts should find that the "high standard" and "extreme" and "severe" test for establishing corporate waste has not been met.  See Zupnick, 698 A.2d at 387; Glazer, 658 A.2d at 183.

The Trustee alleges at ¶¶ 88 and 90-92 of the complaint that Costa permitted RVSI to forfeit an asset that Costa valued at more than $20 million in exchange for saving $550,000, the total of the last two payments to GSI, which amount RVSI was ready and able to pay.  The Trustee alleges that Costa's actions were based upon personal animosity and resulted in a breach of the duty of care he owed to RVSI.  Assuming for purposes of Costa's motion to dismiss that the allegations in the complaint are true, the Trustee has set forth a plausible claim for corporate waste as reasonable, informed minds would not disagree that the consideration of $550,000 for

29

losing a license valued at $20 million, which protected RVSI's SEG business, was grossly inadequate.

Costa argues that the Trustee's claim for waste fails because his decision not to make the last two payments and lose the technology was reasonable as Costa believed RVSI was no longer using GSI's technology and the company was in dire financial straits at the time he made his decision. According to Costa, a reasonable person could certainly entertain the view that using the company's few remaining assets to keep the company afloat rather than to pay for technology it was no longer using was reasonable and therefore did not constitute corporate waste.

Costa's contentions really form the basis of a defense to the Trustee's claims. To dismiss a claim under FRCP 12(b)(6) on the basis of an affirmative defense requires that (1) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (2) those facts suffice to establish the affirmative defense with certitude. Nisselson, 469 F.3d at 150. Upon review of the record on Costa's motion to dismiss, the Court is unable to find that RVSI was no longer using the GSI technology and therefore concludes that Costa has not established his defense with certitude. In addition, determining whether adequate consideration was received and whether good faith existed is a factual inquiry that is inappropriate at the motion to dismiss stage. Miller v. McCown De Leeuw & Co, Inc. (In re The Brown Schools), 368 B.R. 394, 408 (Bankr. D. Del. 2007). For that reason, Costa's motion to dismiss Count IX insofar as it challenges Costa's decision not to make the two final payments to GSI shall be denied.

### C.      Count XIX - Objection to Jonathan Howe's Proof of Claim

In Count XIX at ¶ 241 of the complaint, the Trustee objects to Howe's claim (POC 667) on the grounds that Howe's claim seeks indemnification for claims against him for breach of his

duties to RVSI and such claim is covered by insurance and therefore should be denied.  To the extent Howe's claim is not covered by insurance, the Trustee seeks in ¶¶ 241-42 a declaration by the Court that Howe's claim is a prepetition general unsecured claim.  Howe seeks dismissal of Count XIX on the grounds that the Trustee has failed to state a claim under FRCP 12(b)(6) because he provides no basis for the disallowance of Howe's claim.  Howe states that Rule 3001(f) requires the Court to find that his proof of claim constitutes prima facie evidence of the validity and amount of his claim and such evidence has not been rebutted the Trustee.  Howe argues that the complaint, in fact, tacitly admits that Howe's claim is valid by stating that the claim may be covered by insurance.

While Howe is correct that the filing of a proof of claim constitutes prima facie evidence of the validity and amount of his claim, he is incorrect when he states that the complaint fails to set forth sufficient allegations to rebut the presumption.  Upon review of the complaint, the Court finds it plausible that Howe's indemnification claim may be covered by insurance in which case Howe would not be entitled to seek recovery from the RVSI estate.  In addition, the Trustee's alternative request, that Howe's claim be declared a prepetition general unsecured claim, also satisfies the pleading requirements of FRCP 8(a).  For those reasons, Howe's motion to dismiss Count XIX shall be denied.

## IV.    CONCLUSION

This opinion constitutes the Court's rulings under FRCP 12(b)(6).  The Court shall issue separate orders consistent with this opinion ruling on the defendants' various motions to dismiss.

ENTERED at Manchester, New Hampshire.


Date:   August 30, 2007                    /s/ J. Michael Deasy
                                           J. Michael Deasy
                                           Bankruptcy Judge